**ORIGINAL**

FILED IN OPEN COURT
U.S.D.C. Atlanta

AUG 06 2019

James N. Hatten, Clerk
By: _Charlene A. Hewett_
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

██████████

YAN ORJOUX,
LOUISE STEFANI,

██████████████

and

STAR TRADE INTERNATIONAL,
LLC

Criminal Indictment No.

**1:19-CR-291**

**Under Seal**

THE GRAND JURY CHARGES THAT:

### Count 1

*Conspiracy to Violate the International Emergency Economic Powers Act*
(50 U.S.C. § 1705)

### Introduction

At all times material to this Indictment:

1.    Star Trade International, LLC ("STI") was a corporation organized

under the laws of Georgia. STI was in the business of procuring mechanical

equipment in the United States for export to the Middle East and elsewhere.

2.    Defendant YAN ORJOUX ("ORJOUX") was a dual national of

France and the United States residing chiefly in Marietta, Georgia. ORJOUX was

the founder, president and chief executive officer of STI.  ORJOUX operated STI

from his residence in Marietta, Georgia in the Northern District of Georgia and

elsewhere.

3.    Defendant LOUISE STEFANI ("STEFANI") was a citizen of the

United States and Canada residing in Marietta, Georgia.  STEFANI was

employed by STI and ORJOUX to assist in the day-to-day operations of the

business.

4.    V.H. was a citizen of the United States and Canada residing in

Marietta, Georgia. V.H. was employed by STI and ORJOUX to assist in the day-

to-day operations of the business.



### The Iran Trade Embargo and the Iranian Transactions and Sanctions Regulations

7.    The International Emergency Economic Powers Act (IEEPA), 50

U.S.C. §§ 1701-1706, authorized the President of the United States to impose

economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States upon declaring a national emergency with respect to that threat.

8. On March 15, 1995, the President issued Executive Order No. 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Executive Order No. 12957, which was continued by Executive Orders Nos. 12959 and 13059, was in effect at all times relevant to this Indictment.

9. Executive Orders Nos. 12959 and 13059 (collectively, with Executive Order No. 12957, "the Executive Orders,") imposed economic sanctions, including a trade embargo, on Iran. The Executive Orders prohibited, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders also prohibited any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in the Executive Orders.

10.    The Executive Orders authorized the United States Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Orders.  Pursuant to this authority, the Secretary of the Treasury, through the Office of Foreign Assets Control (OFAC), promulgated the Iranian Transactions Regulations, subsequently renamed the Iranian Transactions and Sanctions Regulations (ITSR), 31 C.F.R. Part 560, implementing the sanctions required by the Executive Orders.

11.    Absent written authorization or a license from OFAC, the ITSR prohibited:

a.  Any transaction that evades or avoids or attempts to violate; seeks to evade or avoid; causes a violation of; or conspires to violate the ITSR (31 C.F.R. § 560.203);

b.  The exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran, including the exportation, reexportation, sale, or supply of any goods, technology or services to a person in a third country undertaken with knowledge or reason to know that such goods, technology, or services are intended specifically for supply, transshipment, or reexportation,

directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.204);

c. The reexportation from a third country, directly or indirectly, by a person other than a United States person, of any goods, technology, or services that have been exported from the United States if: (i) such reexportation is undertaken with knowledge or reason to know that the reexportation is intended specifically for Iran or the Government of Iran, and (ii) the exportation of such goods, technology, or services, was subject to export license application requirements under any United States regulations (31 C.F.R. § 560.205).

12. The Executive Orders and the ITSR were in effect at all times relevant to this Indictment. At no time relevant to this Indictment did any of the defendants or any associated or related persons or entities apply for or obtain any written authorization or export license from OFAC.

### Export and Shipping Records

13. The U.S. Department of Commerce, through the U.S. Census Bureau and the U.S. Department of Homeland Security, Customs & Border Protection, participated in and maintained the Automated Export System (AES), an electronic portal of information for exports of goods from the United States. The Census Bureau required the filing of electronic export information (EEI) through

the AES (using AESDirect) pursuant to 13 C.F.R. Part 30. The purpose of these requirements was to strengthen the U. S. Government's ability to prevent the export of certain items to unauthorized destinations and end users because the AES aided in targeting, identifying, and, when necessary, confiscating suspicious or illegal shipments prior to exportation. 15 C.F.R. § 30.1(b). Exporters filed EEI by entering the data manually into AES via a computer. 15 C.F.R. § 30.6(a). EEI included the date of export, the U.S. Principal Party of Interest, the description of the commodity to be exported, the intermediate consignee's name and address (if applicable), the ultimate consignee's name and address, and the country of ultimate destination. 15 C.F.R. § 30.6. Each filing was identified by a unique Internal Transaction Number. Exporters, shippers, and freight forwarders were required to file an EEI for every export of goods or technology from the United States that had a value greater than $2,500 or for which an export license was required. (15 C.F.R. § 758.1; 15 C.F.R. § 30.2).

### 13 U.S.C. § 305 – Unlawful Export Information Activities

14.    Title 13, U.S.C. § 305 states that "[a]ny person who knowingly fails to file or knowingly submits false or misleading export information through the Shippers Export Declaration (SED) (or any successor document) or the Automated Export System (AES) shall be subject to a fine not to exceed $10,000 per violation or imprisonment of not more than 5 years or both." Section 305

further states that "[a]ny person who knowingly reports any information on or uses the SED or the AES to further any illegal activity shall be subject to a fine not to exceed $10,000 per violation or imprisonment for not more than 5 years or both."

### 18 U.S.C. § 554 – Smuggling Goods from the United States

15.   Title 18, U.S.C. § 554 states that "[w]hoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both."

### The Conspiracy

16.   Beginning in or about February 2016, the exact date being unknown to the Grand Jury, and continuing through in or about August 2017, in the Northern District of Georgia and elsewhere, defendants

YAN ORJOUX,
LOUISE STEFANI,
and

STAR TRADE INTERNATIONAL, LLC

did knowingly and willfully combine, conspire, confederate, and agree with each

other and others known and unknown to the Grand Jury, to defraud the United

States and commit the following offense against the United States, to wit:

knowingly and willfully exporting mechanical equipment and parts from the

United States to Iran without first having obtained from the U.S. Department of

the Treasury either written authorization or a license, in violation of the

International Emergency Economic Powers Act, 50 U.S.C. § 1705, and Title 31,

Code of Federal Regulations, §§ 560.203, 560.204, and 560.205.

### Objects

17.    The objects of the conspiracy were:

a.    To acquire and procure mostly U.S.-origin mechanical

equipment and parts, such as valves, positioners, regulators, scanners, UI boards,

sensors, detectors, monitors, switches, associated repairs kits and other electronic

components (collectively "Mechanical Equipment") ███████████████

███████████████████████████████████

b.    To conceal from the U.S. government and U.S. companies that

the Mechanical Equipment was to be exported to Iran██████████████

██████;

c. To make financial profit for defendants and other coconspirators;

d. To submit false and misleading export information through Shippers Export Declarations and the AES;

e. To declare falsely to United Parcel Service (UPS) stores in and around Cobb County, Georgia the value of certain U.S.-origin Mechanical Equipment to avoid the $2,500 threshold that triggers a requirement that the shipment be reported in the AES; and

f. To evade the regulations and prohibitions of IEEPA and the ITSR.

**Manner and Means**

18. Defendants ORJOUX, STEFANI, ███████████ and STI, together with others known and unknown to the Grand Jury, would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

a. Defendants ORJOUX, STEFANI, ███████, and other conspirators would use e-mail accounts and other forms of communication to communicate with co-conspirators ███████████

b.     Defendant ▇▇▇▇▇ would request quotes for specified types and quantities of U.S.-origin Mechanical Equipment from defendants ORJOUX and STEFANI ▇▇▇▇▇▇▇▇▇▇▇▇▇

c.     Defendants ORJOUX and STEFANI would respond to requests ▇▇▇▇▇▇▇▇▇ by contacting the U.S. (and other) manufacturers and suppliers to obtain pricing quotations based on the quantities and specifications requested ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇

d.     Defendants ORJOUX and ▇▇▇▇▇ would negotiate with U.S. and other manufacturers and suppliers as to the terms of the order, including purchase price and delivery terms, for the Mechanical Equipment ordered ▇▇▇▇▇▇▇▇▇▇▇▇n Iran.

e.     Defendant ORJOUX would prepare, or cause to be prepared, shipping and customs documentation, and arrange for delivery of the Mechanical Equipment ▇▇▇ via UPS using addresses in the United Arab Emirates (UAE), as directed by defendant ▇▇▇▇▇ for the purpose of transshipping through UAE and reexporting to Iran to defendants ▇▇▇▇▇ ▇▇▇

f.     Beginning on or about April 20, 2016, defendant ▇▇▇▇▇ would instruct defendants ORJOUX and STEFANI not to list ▇▇▇ as the

10

purchaser and consignee (i.e., end user) for ███ orders, but rather use the name and address of a series of intermediary companies in Dubai, UAE, for the purpose of concealing that the Mechanical Equipment was ultimately destined for ███████████████ Iran.

      g.    Defendants ORJOUX and STEFANI, together with V.H., would falsely inform UPS that the end user for the Mechanical Equipment was located in the UAE, all the while knowing that the Mechanical Equipment was intended for, and would be shipped on to Iran for, defendants ████████ ██.

      h.    Defendants ███████████ would pay for the orders through international monetary wire transfers to accounts specified by defendant ORJOUX.

### Overt Acts

19.  In furtherance of this conspiracy, and to accomplish its purpose and object, at least one of the conspirators committed or caused to be committed, in the Northern District of Georgia and elsewhere, at least one of the following overt acts:

### The May 31, 2016 Shipment

20.  On or about February 16, 2016, defendant ██████████ asked defendant ORJOUX for "your best offer" on ten positioner repair kits and two

11

positioners (the "Positioners and Repair Kits"), including items produced by a U.S.-based manufacturer.

21. On or about February 16, 2016, defendant STEFANI asked the U.S.-based manufacturer of the Positioners and Repair Kits for a quote and lead delivery time.

22. On or about February 17, 2016, defendant STEFANI sent defendant ██████████ the requested quote.

23. On or about February 21, 2016, defendant ██████████ asked defendants STEFANI and ORJOUX whether ████ could buy directly from STI and whether STI could ship the Positioners and Repair Kits directly to Iran.

24. On or about February 21, 2016, defendant ORJOUX told defendant ██████████ that STI could not ship directly to ████ in Iran, but that STI could transship to Iran through the UAE.

25. On or about February 21, 2016, defendant ██████████ informed defendants ORJOUX and STEFANI that ████ used three companies in the UAE for distribution in Iran.

26. On or about March 1, 2016, defendant ██████████ asked defendant ORJOUX for a price quote on additional U.S.-origin parts, including three air filter regulators ("AFRs") and a scanner, and received the requested quote from defendant STEFANI.

27. On or about April 9, 2016, defendant ███████ asked defendants STEFANI and ORJOUX for a price quote on two U.S.-origin conductivity sensors ("FR Sensors").

28. On or about April 11, 2016, defendant STEFANI contacted a U.S.-based supplier of the FR Sensors with a request for a price quote.

29. On or about April 19, 2016, defendant ███████ sent a combined purchase order to defendants ORJOUX and STEFANI for the Positioners and Repair Kits, AFRs, scanners, along with other pump parts.

30. On or about April 19, 2016, defendant ORJOUX sent invoice #001ARV/2016 for $5,907 for this order, and included wiring instructions for the transfer of ███ purchase money to STI's Wells Fargo Bank account in Marietta, Georgia.

31. On or about April 19, 2016, defendant ███████ sent defendants ORJOUX and STEFANI a purchase order for the Positioners and Repair Kits and other pump parts. The purchase order replaced ████ the listed purchaser with a UAE trading company located in the Blue Tower in Dubai, UAE. Defendant ██████ instructed defendants ORJOUX and STEFANI, "PLEASE NOTE: all shipping documents and so [sic], invoice should be issue [sic] to mentioned name only. Do not use our ████ name any more."

32. On or about April 23, 2016, defendant ORJOUX sent defendant ███████ a revised invoice for STI's sale ████ of the U.S.-origin pump parts in the amount of $5,907. ████████████████████████ defendant ORJOUX did not list ████ the buyer on the invoice, but instead listed a UAE intermediary company in Dubai, UAE.

33. On or about April 25, 2016, defendant ORJOUX created, or caused to be created, order #001-3ARF/2016 for the purchase of four scanners from the U.S. supplier based in Westchester, Pennsylvania.

34. On or about April 26, 2016, defendant ████████ caused a payment of $5,907 to be sent by international wire transfer to an STI account at Wells Fargo Bank account for payment of invoice #001-ARV/2016.

35. On or about April 27, 2016, defendant ███████ notified defendants ORJOUX and STEFANI of the sending of a payment to STI for the purchase order for U.S.-origin pump parts, and included wire transfer documentation as an attachment.

36. On or about April 27, 2016, defendant ORJOUX informed defendant ███████ of the receipt of $5,907 in STI's Wells Fargo Bank account.

37. On or about May 26, 2016, defendant ORJOUX told defendant ███████ that the two FR Sensors were ready for shipment ████

38.   On or about May 26, 2016, defendant ███████ instructed defendant ORJOUX to list the value of the shipment as $1,000 and not to list ███ as the purchaser.

39.   On or about May 31, 2016, defendant ███████ told defendants ORJOUX and STEFANI to substitute a different UAE shipping company in the Blue Tower, Dubai, UAE, to be listed as the purchaser, and stated that ORJOUX and STEFANI should not use the ████ name in future communications or records.

40.   On or about May 31, 2016, defendant ORJOUX sent V.H. a UPS label, a packing list and a revised invoice #001-1ARV/2016 for the U.S.-origin pump parts.  Defendant ORJOUX caused the invoice to be altered to reduce the declared value of the shipment to $1,000, below the $2,500 minimum threshold amount that triggers a requirement that the shipment be reported in AES upon delivery for mailing. Defendant ORJOUX instructed V.H. to prepare the pump parts for shipment ██████████ and to deliver the package for shipment to UPS.

41.   On or about May 31, 2016, at the direction of defendant ORJOUX, V.H. took to UPS a package containing Positioners and Repair Kits, four scanners, three AFRs, and two FR Sensors, addressed for shipment to a shipping company in Dubai, UAE but ultimately intended for ███████████ Iran, per ██████████████████ instructions to defendant STI.

### The November 7, 2016 Shipment

42.   On or about April 25, 2016, defendant ███████ asked defendants ORJOUX and STEFANI for a price quote on twelve U.S.-origin disc assemblies and received the quote from defendant STEFANI.

43.   On or about May 25, 2016, defendant █████████ asked defendants ORJOUX and STEFANI for a price quote on four U.S.-origin Fire Sentry Flame Detectors ("Flame Detectors") and four U.S.-origin stainless steel Swivel Mounts ("Swivel Mounts").

44.   On or about June 2, 2016, defendant STEFANI sent defendant ███████ the requested quote.

45.   On or about June 13, 2016, defendant ████████ asked defendants ORJOUX and STEFANI for a price quote for five U.S.-origin Cylinder Top Gauges ("Top Gauges"), and received the quote from defendant STEFANI.

46.   On or about June 13, 2016, defendant ████████ asked defendants ORJOUX and STEFANI for a price quote for three U.S.-origin pressure gauges.

47.   On or about June 20, 2016, defendant ██████ sent purchase order #95_03.0200 for six Flame Detectors and four Swivel Mounts to defendant ORJOUX.

16

48. On or about June 20, 2016, defendant ORJOUX sent invoice #002ARF/2016 to defendant ███████ for purchase order #95_03.0200, listing a total price of $15,190.

49. On or about June 20, 2016, defendant ███████ sent purchase order #95_03.0100 to defendants ORJOUX and STEFANI for the purchase of Mechanical Equipment parts, including twelve disc assemblies; five Top Gauges; and three pressure gauges.

50. On or about June 26, 2016, defendant ███████ sent defendants ORJOUX and STEFANI a bank transfer receipt reflecting that an "advance payment" of $9,536 for "quote002ARV-2016 and quote003ARV-2016" would be paid two days later. Defendant ███████ attached to the email invoice #002ARF/2016, invoice #003ARV/2016, and a banking receipt, stating that the $9,536 payment would be transferred to STI's Fidelity Bank account in two days.

51. On or about June 28, 2016, defendant ███████ caused $9,536 to be sent by international wire transfer to STI's Fidelity Bank account in payment for the packing lists corresponding to invoices #002ARF/2016 and #003-1ARV/2016.

52. On or about June 28, 2016, defendant ORJOUX notified defendant ███████ that the funds for the orders had been received.

53. On or about October 15, 2016, defendant ███████ instructed defendants ORJOUX and STEFANI to consolidate the twelve disc assemblies,

five Top Gauges and three pressure gauges with the six Flame Detectors and four Swivel Mounts.

54.   On or about October 30, 2016, defendant ███████ caused $10,130 to be sent by international wire transfer to STI's Wells Fargo Bank account in payment of packing list #002-1ARF/2016 and asked defendants ORJOUX and STEFANI to confirm receipt of the payment.

55.   On or about November 6, 2016, defendant ORJOUX informed defendants ███████ and STEFANI that the order was packed and ready for shipment.

56.   On or about November 6, 2016, defendant ███████ notified a shipping company in Dubai, UAE by email that an order in the U.S. was ready for shipment.   Defendant ███████ emailed the UAE shipping company invoice #002-1ARV/2016, with a stated value of $1,000 and a packing list reflecting the Flame Detectors and Swivel Mounts.

57.   On or about November 7, 2016, the UAE shipping company sent defendant ORJOUX a shipping label for items listed in invoice #002-1ARV/2016 and UPS tracking number 1ZA5E3408694304204.

58.   On or about November 7, 2016, defendant ORJOUX caused a package to be delivered to UPS containing Flame Detectors, Swivel Mounts, disc assemblies, Top Gauges, and pressure gauges, addressed for shipment to a

shipping company in Dubai, UAE but ultimately intended for ▮▮▮▮▮

Iran, per defendant ▮▮▮▮▮ instructions to defendant STI.

**The September 26, 2016 Shipment**

59. On or about April 13, 2016, defendant ▮▮▮▮▮ asked defendants ORJOUX and STEFANI for a price quote on ten "Diaph and O-Ring sets" (part #50005470) and twenty "Diaph and O-Ring sets" (part #5000548) for "SOR" pressure switches (the "D&O Sets"), and received the quote from defendant STEFANI.

60. On or about May 25, 2016, defendant ▮▮▮▮▮ asked defendants ORJOUX and STEFANI for a price quote for a U.S.-origin Point Level Sensor ("Level Sensor").

61. On or about June 13, 2016, defendant ▮▮▮▮▮ requested a price quote from defendants ORJOUX and STEFANI for four O-Rings and five Top Gauges, and received the requested quote from defendant STEFANI.

62. On or about July 18, 2016, defendant ORJOUX sent order #003-1ARV/2016 to a company based in Lenexa, Kansas, for the purchase of the D&O Sets.

63.   On or about July 21, 2016, defendant ORJOUX submitted purchase order #003-3ARV/2016 to a company based in Suwanee, Georgia for the purchase of the O-Rings and Top Gauges.

64.   On or about August 17, 2016, defendant ORJOUX sent purchase order #004ARF/2016 to a company based in Charlotte, North Carolina for the Level Sensor, a copy of a price quote from the U.S.-based supplier, and an end user certificate completed by STI and signed by ORJOUX, falsely stating that the end user of the product was a chemical company in Malaysia.

65.   On or about August 17, 2016, defendant ORJOUX sent order #004ARF/2016 to the Charlotte-based company for the purchase of the Level Sensor.

66.   On or about August 17, 2016, defendant ORJOUX submitted order #004-1ARF/2016 to a company in Atlanta, Georgia to buy two relay alarms to fulfill an order from defendants █████████████

67.   On or about September 22, 2016, defendant █████████ caused $9,000 to be sent by international wire transfer to defendant STI's Wells Fargo Bank account in payment of invoice #003-1ARV/2016.

68.   On or about September 24, 2016, defendant █████████ sent a wire transfer record for the $9,000 sent to defendant STI's Wells Fargo Bank account in

payment of invoice #003ARV2016 and asked defendants ORJOUX and ██████████ for confirmation that defendant STI received the funds.

69.   On or about September 24, 2016, defendant ORJOUX told defendant ██████████ that the funds had been received.

70.   On or about September 24, 2016, a UAE shipping company in Dubai, UAE sent defendant ORJOUX three shipping labels with UPS tracking numbers 1ZA5E3408692035713, 1ZA5E3408694180722 and 1ZA5E3408690327732, and packing list #003-1ARV/2016.

71.   On or about September 25, 2016, defendant ██████████ directed the UAE shipping company to arrange for shipping and Iranian Customs clearance, and the delivery of the items to his Iranian office.  Defendant ██████████ sent the UAE shipping company packing list #003-1ARV/2016.

72.   On or about September 26, 2016, defendant ORJOUX caused to be delivered to UPS for mailing a package ultimately destined for ██████ Iran, which included the U.S.-origin D&O Sets, pressure regulators, the Level Sensors, and the relay alarms, among other items.  Defendant STI addressed the package to a UAE shipping company in Dubai, per ██████████ instructions.

73.   On or about September 26, 2016, V.H. notified defendant ORJOUX that V.H. had dropped off the package at UPS that day.

74.   On or about October 3, 2016, defendant ███████ old defendants ORJOUX and STEFANI that the package had been received, but that it did not include the disc assemblies for a gas regulator or the O-Rings and Top Gauges.

### The December 14, 2016 Shipment

75.   On or about April 9, 2016, defendant ███████ asked defendants ORJOUX and STEFANI for a price quote on a cable,, which is part of a larger control system (the "Control System Cable").

76.   On or about April 9, 2016, defendant ███████ requested a price quote from ORJOUX and STEFANI for ten U.S.-origin drain filters.

77.   On or about April 11, 2016, defendant STEFANI sent defendants ███████ and ORJOUX a price quote on the ten drain filters.

78.   On or about July 10, 2016, defendant ███████ asked defendants ORJOUX and STEFANI for a price quote for two U.S.-origin LCD Monitors.

79.   On or about September 13, 2016, defendant STEFANI sent a price quote to defendan ███████ for the LCD Monitors.

80.   On or about September 22, 2016, defendant STEFANI gave defendant ███████ a price quote for the Control System Cable.

81.  On or about October 26, 2016, defendant ORJOUX submitted order #005ARV/2016 to a company based in Marietta, Georgia for the purchase of the ten drain filters.

82.  On or about October 26, 2016, defendant ORJOUX issued Order # 005-2ARV/2016 to a company based in Pasadena, Texas to buy ten LCD Monitors.

83.  On or about October 26, 2016, defendant ORJOUX sent order #005-3ARV/2016 to a company based in Pasadena, Texas for the purchase of the Control System Cable.

84.  On or about November 22, 2016, defendant ███████ sent purchase order #95_07.300 Rev 2 to defendant ORJOUX listing a price of $5,983 for the Control System Cable.  Defendant ████████ instructed defendant ORJOUX to list the value of the goods shipped at $1,000 and not to list ██ on any records.

85.  On or about November 29, 2016, defendant ORJOUX sent defendant ████████ invoice #005ARV/2016, invoice #006ARV/2016, and information for STI's Wells Fargo Bank account in the Northern District of Georgia.

86.  On or about December 7, 2016, defendant ████████ sent $3,348 by international wire transfer to STI's Wells Fargo Bank account in payment of invoice #005-1ARV/2016.

87. On or about December 7, 2016, defendant ▮▮▮▮▮ notified defendants ORJOUX and STEFANI of the transfer of $3,348 into STI's Wells Fargo Bank account and sent them copies of purchase orders #95_07.300 Rev2 and #95_09.300.

88. On or about December 9, 2016, defendant ▮▮▮▮▮ notified the UAE shipping company in Dubai, UAE, that goods were ready for pickup from the United States. Defendant ▮▮▮▮▮ sent the intermediary shipping company packing list #005-1ARV/2016, invoice #005-1ARV/2016, and a shipping document referencing invoice #005-1ARV/2016 from STI.

89. On or about December 12, 2016, defendants KHATAMI and ORJOUX communicated about combining and preparing for STI to ship the drain filter, LCD Monitor, Control System Cable, and disc assembly orders, with a consolidated packing list and invoice declaring a value of $1,000.

90. On or about December 12, 2016, defendant ORJOUX told defendant ▮▮▮▮▮ that the goods for the consolidated orders had been packaged and were ready for shipment.

91. On or about December 14, 2016, defendant ▮▮▮▮▮ sent defendants ORJOUX and STEFANI a shipping label with UPS tracking #1ZA5E3408691173692 for the shipment referenced in packing list #005-1ARV/2016. This shipment included the drain filters, the LCD Monitor, the

Control System Cable, and disc assemblies. The shipping label listed the address of the intermediary shipping company at the Blue Tower in Dubai, UAE.

92. On or about December 14, 2016, defendant ORJOUX caused a package to be delivered to UPS, ultimately destined for ████████ ████████ Iran, containing drain filters, the LCD Monitor, the Control System Cable, and disc assemblies. The package was addressed to a shipping company in Dubai, UAE, pursuant to ████████ instructions.

93. On or about December 19, 2016, the shipping company in Dubai, UAE notified defendant ████████ that the shipment was being held in Iranian Customs for delivery to defendant ████████.

94. On or about December 24, 2016, defendant ████████ notified defendants ORJOUX and STEFANI of the receipt of the shipment.

### The February 1, 2017 Shipment

95. On or about December 31, 2016, defendant ████████ asked defendants ORJOUX and STEFANI for a price quote on a U.S.-origin mechanical vibration switch (the "Vibration Switch").

96. On or about January 3, 2017, defendant STEFANI sent defendant ████████ a price quote for the Vibration Switch.

97. On or about January 4, 2017, defendant ORJOUX sent defendant ███████ invoice #008ARV/201 for a Vibration Switch and wiring instructions for STI's Fidelity Bank account in Atlanta, Georgia.

98. On or about January 11, 2017, defendant █████████ caused $9,417 to be sent by international wire transfer to STI's Wells Fargo Bank account in partial payment of invoices #007-ARV/2016 and #008-AR/2017, which included the $587 charge for the Vibration Switch.

99. On or about January 30, 2017, defendant ORJOUX instructed V.H. to create a consolidated shipment for invoices #007-ARV/2016 and #008-AR/2017.

100. On or about January 31, 2017, defendant ORJOUX told defendant ███████ V.H. that STI had combined the Vibration Switch and U.S.-origin pressure switches into one shipment.

101. On or about February 1, 2017, at defendant ORJOUX's direction, V.H. took to UPS for mailing a package containing the Vibration Switch and the pressure switches, with a shipping label provided by defendant ███████ addressed to an intermediary company in the Blue Tower, UAE, Dubai for transshipment to defendant ACF in Iran, pursuant to ███████ instructions.

### The May 4, 2017 Shipment

102. On or about February 7, 2017, defendant ███████ asked defendants ORJOUX and STEFANI for a quote for four U.S.-origin Purolator Replacements (the "PFRs").

103. On or about February 8, 2017, defendant ██████ sent defendants ORJOUX and STEFANI a purchase order for █████████ four PFRs.

104. Defendant ██████████ instructed that defendant STI should not list defendant ████ in any shipping documents, but rather identify an intermediary, a UAE shipping company in the Blue Tower in Dubai, as the purchaser.

105. On or about February 8, 2017, defendant ██████ caused $425 to be sent by international wire transfer to STI's Fidelity Bank account in payment of packing list #009ARV/2017.

106. On or about March 1, 2017, defendant STEFANI ordered four PFRs from the U.S.-based manufacturer.

107. On or about April 24, 2017, defendant ██████ asked defendants ORJOUX and STEFANI to "confirm [PFR] order is ready for ship."

108. On or about May 3, 2017, defendant ███████ informed the UAE shipping company that the PFRs were ready for shipment from the United States and attached a packing list and invoice from defendant STI.

109. On or about May 4, 2017, the UAE shipping company sent defendant ORJOUX a shipping label and invoice #009ARV/2017 for $360 for the four PFRs. The UAE shipping company notified defendant ORJOUX that the company had been instructed to collect the shipment from defendant STI.

110. On or about May 4, 2017, defendant ORJOUX caused the consolidated package containing the PFRs to be taken to UPS labeled for delivery to the UAE shipping company, knowing that defendants ███████████ in Iran, and their customers in Iran, were the ultimate recipients and end users.

111. On or about May 6, 2017, the UAE shipping company informed ████████ that it had picked up the shipment of four PFRs from STI.

### The October 19, 2017 Shipment

112. On or about September 3, 2016, defendant ████████ asked defendants ORJOUX and STEFANI for a quote on two Positioners and two Booster Relays.

113. On or about September 8, 2016, defendant STEFANI gave ████████ the requested quote.

114. On or about February 19, 2017, defendant ████████ asked defendants ORJOUX and STEFANI for a quote on four U.S.-origin Safety Release Disc Inserts (the "Disc Inserts").

115. On or about February 20, 2017, defendant STEFANI sent defendant ███████ the requested quote for the Disc Inserts.

116. On or about June 6, 2017, defendant ███████ requested a price quote from defendants ORJOUX and STEFANI for thirty-five "Beta" switches with various part numbers (the "Beta Switches").

117. On or about June 7, 2017, defendant STEFANI sent defendant ███████ the requested price quote.

118. On or about July 3, 2017, defendant ███████ asked defendants ORJOUX and STEFANI for a quote for eight U.S.-origin pneumatic valves.

119. On or about July 6, 2017, defendant STEFANI sent defendant ███████ the requested quote for the pneumatic valves.

120. On or about July 9, 2017, defendant ███████ sent purchase order #96_04.400 to defendants ORJOUX and STEFANI for the pneumatic valves and the Disc Inserts.

121. On or about July 9, 2017, defendant ███████ sent defendants ORJOUX and STEFANI purchase order #96_04.300 as to the purchase of thirty-five Beta Switches and instructed that STI was not to use ███████ ███████ on any of the shipping documents.

122. On or about July 10, 2017, defendant ORJOUX sent invoice #011ARV/2017 to defendant ███████ and invoice #012ARV/2017 to confirm

██████████ purchase of the pneumatic valves and the Disc Inserts for $1877.20, with STI's Fidelity Bank account and bank routing information.

123. On or about July 13, 2017, defendant ██████ sent defendants ORJOUX and STEFANI documentation for advance payment for the Beta Switch, pneumatic valve, and Disc Insert orders, and attached an "Application for Telegraphic Transfer" for invoice #010ARV-2017, #011ARV-2017 and #012ARV-2017.

124. On or about July 13, 2017, defendant ██████ caused $5,795 to be sent by international wire transfer to defendant STI's Fidelity Bank account in partial payment of packing list #014ARV/2017.

125. On or about July 15, 2017, defendant ORJOUX told defendant ██████ that the funds had been deposited into defendant STI's Fidelity Bank account.

126. On or about August 9, 2017, defendant ██████ sent defendants ORJOUX and STEFANI purchase order #96_0518-13 for two Positioners and two Booster Relays.

127. On or about August 9, 2017, defendant ORJOUX submitted invoice #013ARV/2017 ██████ for the purchase of two Positioners and two Booster Relays for $3,742, together with a copy of the wire transfer instructions for defendant STI's Fidelity Bank account.

128. On or about August 14, 2017, defendant ███████ requested a price quote from defendants ORJOUX and STEFANI for three U.S.-origin Vibration Switches.

129. On or about August 14, 2017, defendant ORJOUX submitted invoice #014ARV/2017 to defendant ███████ for the purchase of three Vibration Switches for $2,850.

130. On or about August 15, 2017, defendant ORJOUX gave defendant ███████ STI's Fidelity Bank account routing information and account number.

131. On or about October 12, 2017, defendant ███████ sent $1,425 by international wire transfer to STI's Fidelity Bank account in payment of the balance due on the Vibration Switches order.

132. On or about October 12, 2017, defendant ███████ sent defendants ORJOUX and STEFANI proof of the transfer of $1,425 to STI's Fidelity Bank account with documentation referencing payment for the Vibration Switches order.

133. On or about October 16, 2017, defendant ORJOUX directed V.H. to consolidate the parts and equipment listed in purchase orders: #96_0524/17; #96_0518/13, #96_04.300; and #96_04.400 into one shipment. Defendant ORJOUX sent V.H. copies of the previously issued invoices, a consolidated

packing list #014-1ARV/2017, and newly issued invoice #014-1ARV/2017 reflecting a total price of $13,634.

134. On or about October 18, 2017, defendant ███████ instructed the UAE shipping company that, upon receipt of the order from the United States, "PLEASE SHIP it to Tehran & and release from custom / OUR OFFICE DELIVERY."

135. On or about October 18, 2017, the UAE shipping company in Dubai, UAE responded to defendant ██████ by stating that the shipment in question had been assigned order # IR9430 and included a copy of a shipping document referencing STI and packing list #014-1ARV-2017.

136. On or about October 19, 2017, at the direction of defendant ORJOUX, V.H. brought the package to UPS with attached invoice #014-1ARV/2017, listing the value of the goods at $1,500, packing list #014-1ARV/2017, and a UPS shipping label for delivery to the intermediary UAE shipping company.

137. On or about October 21, 2017, the UAE shipping company told defendant ██████ that the shipment with UPS tracking number 1ZA5E340898846587 had been collected by UPS.

All in violation of Title 50, United States Code, Section 1705.

## Counts Two through Eight

*Smuggling Goods from the United States*
(18 U.S.C. § 554)

138. The allegations contained in Paragraphs 1 through 137 of this

Indictment are incorporated and realleged by reference herein.

139. On or about the dates listed below, defendants

YAN ORJOUX,
LOUISE STEFANI,



and

STAR TRADE INTERNATIONAL, LLC

did fraudulently and knowingly export and send from the United States, U.S.-

origin merchandise, articles and objects, knowing the same to be intended for

exportation contrary to the laws and regulations of the United States, to wit, Title

50, United States Code, Section 1705(a), Executive Orders 12957, 12959, and

13059; Title 31, Code of Federal Regulations, Sections 560.203 & 560.204,

specifically the items identified below:

| Ct. | Date | Packing List No. / UPS Tracking No. | Item Description | Invoiced Value / Declared Value (rounded) | False End User / Actual End User |
|---|---|---|---|---|---|
| 2 | 5/31/16 | 001-1ARV/2016 1ZA5E3408693455679 | Pump Parts: Conductivity Sensors, Positioner repair kits, | $5,907/ $1,000 | Dubai, UAE Co./ Iran - ■ |

| | | | Positioners, Air Filter Regulators, and Scanners | | |
|---|---|---|---|---|---|
| 3 | 11/7/16 | 002-1ARF/2016 1ZA5E3408694304204 and 1ZA5E3408690147212 | Pump Parts: fire sentries, stainless steel swivel mounting brackets, disc assemblies, cylinder top gauges and gauges | $15,190/ $1,000 | Dubai, UAE Co./ Iran - ███ |
| 4 | 9/26/16 | 003-1ARV/2016 1ZA5E3408692035713, 1ZA5E3408694180722 and 1ZA5E3408690327732 | Pump Parts: pressure gauges, Diaph and O-ring sets, pressure regulators, discs assemblies, O-rings and cylinder top gauges, level sensors, spherical rod ends and gage cocks, relay alarms | $18,226/ $2,500 | Dubai, UAE Co./ Iran ███ |
| 5 | 12/14/16 | 005-1ARV/2016 1ZA5E3408691173692 | Pump Parts: stainless steel free floating lever liquid drains, LCD monitor, control system parts, | $2,607/ $1,000 | Dubai, UAE Co./ Iran - ███ |

| | | | and disc assemblies | | |
|---|---|---|---|---|---|
| 6 | 2/1/17 | 006-1ARV/2016 1ZA5E3408694305034 | Pump Parts: pressure switches and Vibration Switch | $1,329/ $1,000 | Dubai, UAE Co./ Iran – ███ |
| 7 | 5/4/17 | 009ARV/2017 1ZA5E3408695713743 | Purolator filter replacements | $425/ $425 | Dubai, UAE Co./ Iran – ███ |
| 8 | 10/19/17 | 014-1ARV/2017 1ZA5E3408698846587 | Micro-switches, Vibration switches, positioners Booster Relays, volume boosters, disc inserts and pneumatic valves | $13,634 $1,500 | Dubai, UAE Co./ Iran – ███ |

All in violation of Title 18, United States Code, Section 554 and Section 2.

### Counts Nine through Fifteen

*International Emergency Economic Powers Act*
(50 U.S.C. § 1705)

140. The allegations contained in Paragraphs 1 through 137 of this Indictment are incorporated and realleged by reference herein.

141. On or about the dates listed below, in the Northern District of Georgia and elsewhere, defendants

YAN ORJOUX,

LOUISE STEFANI,

████████████████ and

STAR TRADE INTERNATIONAL, LLC

did knowingly and willfully attempt to export the U.S.-origin commodities listed

below from the United States to Iran without having first obtained the required

authorization from the United States Department of Treasury:

| Ct. | Date | Packing List No. / UPS Tracking No. | Item Description | Invoiced Value/ Declared Value (rounded) | False End User / Actual End User |
|---|---|---|---|---|---|
| 9 | 5/31/16 | 001-1ARV/2016 1ZA5E3408693455679 | Pump Parts: Conductivity Sensors, Positioner repair kits, Positioners, Air Filter Regulators, and Scanners | $5,907/ $1,000 | Dubai, UAE Co./ Iran - ██ |
| 10 | 11/7/16 | 002-1ARF/2016 1ZA5E3408694304204 and 1ZA5E3408690147212 | Pump Parts: fire sentries, stainless steel swivel mounting brackets, disc assemblies, cylinder top gauges and gauges | $15,190/ $1,000 | Dubai, UAE Co./ Iran - ██ |
| 11 | 9/26/16 | 003-1ARV/2016 1ZA5E3408692035713, 1ZA5E3408694180722 | Pump Parts: pressure gauges, Diaph and O-ring | $18,226/ $2,500 | Dubai, UAE Co./ Iran - ██ |

| | | and 1ZA5E3408690327732 | sets, pressure regulators, discs assemblies, O-rings and cylinder top gauges, level sensors, spherical rod ends and gage cocks, relay alarms | | |
|---|---|---|---|---|---|
| 12 | 12/14/16 | 005-1ARV/2016 1ZA5E3408691173692 | Pump Parts: stainless steel free floating lever liquid drains, LCD monitor, control system parts, and disc assemblies | $2,607/ $1,000 | Dubai, UAE Co./ Iran – ▮ |
| 13 | 2/1/17 | 006-1ARV/2016 1ZA5E3408694305034 | Pump Parts: pressure switches and Vibration Switch | $1,329/ $1,000 | Dubai, UAE Co./ Iran – ▮ |
| 14 | 5/4/17 | 009ARV/2017 1ZA5E3408695713743 | Purolator filter replacements | $425/ $425 | Dubai, UAE Co./ Iran – ▮ |
| 15 | 10/19/17 | 014-1ARV/2017 1ZA5E3408698846587 | Micro-switches, Vibration switches, positioners Booster Relays, volume boosters, disc | $13,634/ $1,500 | Dubai, UAE Co./ Iran – ▮ |

| | | | inserts and pneumatic valves | | |
|---|---|---|---|---|---|

All in violation of Title 50, United States Code, Section 1705, and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204, and Title 18, United States Code, Section 2.

### Counts Sixteen through Twenty-Two

*Submitting False or Misleading Export Information*
(13 U.S.C. § 305)

142. The allegations contained in Paragraphs 1 through 137 of this Indictment are incorporated and realleged by reference herein.

143. On or about the dates listed below, in the Northern District of Georgia and elsewhere, defendants

YAN ORJOUX,
LOUISE STEFANI,

▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉and

STAR TRADE INTERNATIONAL, LLC

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly and willfully submit and cause to be submitted false and misleading export information through the Automated Export System for shipments leaving Marietta, Georgia, regarding the ultimate consignee's name

and address, the country of ultimate destination, and the declared value, as
described in each count below:

| Ct. | Date | Packing List No. / UPS Tracking No. | Item Description | Invoiced Value/ Declared Value (rounded) | False End User / Actual End User |
|---|---|---|---|---|---|
| 16 | 5/31/16 | 001-1ARV/2016 1ZA5E3408693455679 | Pump Parts: Conductivity Sensors, Positioner repair kits, Positioners, Air Filter Regulators, and Scanners | $5,907/ $1,000 | Dubai, UAE Co./ Iran - ▇ |
| 17 | 11/7/16 | 002-1ARF/2016 1ZA5E3408694304204 and 1ZA5E3408690147212 | Pump Parts: fire sentries, stainless steel swivel mounting brackets, disc assemblies, cylinder top gauges and gauges | $15,190/ $1,000 | Dubai, UAE Co./ Iran - ▇ |
| 18 | 9/26/16 | 003-1ARV/2016 1ZA5E3408692035713, 1ZA5E3408694180722 and 1ZA5E3408690327732 | Pump Parts: pressure gauges, Diaph and O-ring sets, pressure regulators, discs assemblies, O-rings and cylinder top gauges, level | $18,226/ $2,500 | Dubai, UAE Co./ Iran - ▇ |

| | | | | | |
|---|---|---|---|---|---|
| | | | sensors, spherical rod ends and gage cocks, relay alarms | | |
| 19 | 12/14/16 | 005-1ARV/2016 1ZA5E3408691173692 | Pump Parts: stainless steel free floating lever liquid drains, LCD monitor, control system parts, and disc assemblies | $2,607/ $1,000 | Dubai, UAE Co./ Iran – ■ |
| 20 | 2/1/17 | 006-1ARV/2016 1ZA5E3408694305034 | Pump Parts: pressure switches and Vibration Switch | $1,329/ $1,000 | Dubai, UAE Co./ Iran – ■ |
| 21 | 5/4/17 | 009ARV/2017 1ZA5E3408695713743 | Purolator filter replacements | $425/ $425 | Dubai, UAE Co./ Iran – ■ |
| 22 | 10/19/17 | 014-1ARV/2017 1ZA5E3408698846587 | Micro-switches, Vibration switches, positioners Booster Relays, volume boosters, disc inserts and pneumatic valves | $13,634 $1,500 | Dubai, UAE Co./ Iran – ■ |

In violation of Title 13, United States Code, Section 305 and Title 18, United States Code, Section 2.

### Counts Twenty-Three through Thirty

*Money Laundering*
(18 U.S.C. § 1956(a)(2)(A))

144. The allegations contained in Paragraphs 1 through 137 of this Indictment are incorporated and realleged by reference herein.

145. On or about the dates set forth below, in the Northern District of Georgia and elsewhere, the defendants,

YAN ORJOUX,
LOUISE STEFANI,

██████████████████ and

STAR TRADE INTERNATIONAL, LLC

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds, as described more fully below for each count, to a place in the United States from a place outside the United States, that is, the UAE, with the intent to promote the carrying on of specified unlawful activity, to wit: an offense relating to violations of the International Emergency Economic Powers Act and smuggling goods from the United States, as charged in Counts 1 through 15:

| COUNT | DATE | FUNDS TRANSMITTED AND TRANSFERRED FROM | FUNDS TRANSMITTED AND TRANSFERRED TO | APPROXIMATE AMOUNT OF TRANSACTION |
|---|---|---|---|---|
| 23 | 04/26/2016 | ███ Iran through Turkey | STI & Wells Fargo Bank, USA | $5,907 |
| 24 | 06/28/2016 | ███ Iran through UAE | STI & Fidelity Bank, USA | $9,536 |
| 25 | 10/30/2016 | ███ Iran through UAE | STI &Wells Fargo Bank, USA | $10,130 |
| 26 | 09/22/2016 | ███ Iran through UAE | STI & Wells Fargo Bank, USA | $9,000 |
| 27 | 12/07/2016 | ███ Iran through UAE | STI & Wells Fargo Bank, USA | $3,348 |
| 28 | 01/11/2017 | ███ Iran through UAE | STI & Wells Fargo Bank, USA | $9,417 |
| 29 | 07/13/2017 | ███ Iran through UAE | STI & Fidelity Bank, USA | $5,795 |
| 30 | 10/12/2017 | ███ Iran through Turkey | STI & Fidelity Bank, USA | $1,425 |

In violation of Title 18, United States Code, Section 1956(a)(2)(A) and Section 2.

## Forfeiture Provision

146. As a result of committing one or more of the offenses alleged in Counts 1 through 30 of this Indictment, defendants YAN ORJOUX, LOUISE STEFANI, ███████████████ and STAR TRADE INTERNATIONAL, LLC shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 18, United States Code, Section 982(a)(2); and Title 28, United States Code, Section 2461, all property, real and personal, constituting or derived from proceeds traceable to the offenses.

147. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 18, United States Code, Section 982(b)(1); Title 21, United States Code, Section 853(p); and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A＿＿＿＿＿＿＿*TRUE*＿＿＿＿＿＿＿BILL

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
FOREPERSON

BYUNG J. PAK
  *United States Attorney*

BRIAN M. PEARCE
  *Assistant United States Attorney*
Georgia Bar No. 568768

600 U.S. Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

WILLIAM MACKIE
  *Trial Attorney*
N.C. Bar 13816

U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. N.W.
Washington DC. 20530
202-233-0986; Fax 202-532-4251